UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| **WILLIAM STRICKLAND, Individually and for Others Similarly Situated**<br><br>v.<br><br>**CHARLESTON AREA MEDICAL CENTER, INC.** | Case No. 2:23-cv-00676<br><br>Jury Trial Demanded<br><br>FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

## FIRST AMENDED COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. William Strickland ("Strickland") brings this collective action to recover unpaid wages and other damages from Charleston Area Medical Center, Inc. ("CAMC").

2. Strickland worked for CAMC as a Nursing Assistant in Charleston, West Virginia.

3. Like the Putative Collective Members (as defined below), Strickland regularly worked more than 40 hours in a week.

4. But CAMC did not pay them for all their hours worked.

5. Instead, CAMC required Strickland and Putative Collective Members to suffer unpaid meal periods of 30 minutes a day.

6. Strickland and the Putative Collective Members were thus not paid for that time.

7. But Strickland and the Putative Collective Members did not actually receive *bona fide* meal breaks.

8. Instead, CAMC required Strickland and the Putative Collective Members to remain on-duty and perform compensable work throughout their shifts, and CAMC continuously subjected them to work interruptions during their unpaid "meal breaks."

9. CAMC's unpaid meal period policy violates the Fair Labor Standards Act ("FLSA")

by depriving Strickland and the Putative Collective Members of overtime wages for all overtime hours worked.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court has general personal jurisdiction over CAMC because CAMC is a domestic corporation.

12. Venue is proper because CAMC is headquartered in Charleston, West Virginia, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13. Strickland worked for CAMC as a Nursing Assistant in Charleston, West Virginia from approximately February 2022 until November 2022.

14. Throughout his employment, CAMC classified Strickland as non-exempt and paid him on an hourly basis.

15. Throughout his employment, CAMC subjected Strickland to its common practice of requiring Strickland to suffer unpaid meal periods of 30 minutes a day.

16. But throughout his employment, Strickland did not actually receive *bona fide* meal breaks.

17. Strickland brings this action on behalf of himself and other similarly situated hourly, non-exempt CAMC patient care employees who were subject to CAMC's unpaid meal break policy.

18. CAMC requires non-exempt patient care workers like Strickland to clock out for 30 minutes a day for so-called "meal breaks."

19. But these employees do not actually receive *bona fide* meal breaks.

20. Thus, CAMC uniformly deprives these employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

21. The putative collective of similarly situated employees is defined as:

> **All current and former hourly, non-exempt CAMC employees with direct patient care duties who were subject to unpaid meal periods at any time during 3 years preceding this lawsuit through final resolution of this Action ("Putative Collective Members").**

22. CAMC is a West Virginia corporation headquartered in Charleston, West Virginia.

23. CAMC may be served with process by serving its registered agent: **Angela F. Hill, 501 Morris Street, Charleston, West Virginia 25301**, or wherever she may be found.

### COVERAGE UNDER THE FLSA

24. At all relevant times, CAMC was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

25. At all relevant times, CAMC was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

26. At all relevant times, CAMC was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because CAMC, had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on good or materials—such as cellphones, computers, medical tools, and personal protective equipment—that have been moved in or produced for commerce.

27. At all relevant times, CAMC has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

28. At all relevant times, Strickland and the Putative Collective Members were CAMC's "employees" within the meaning of Section 3(e) of the FLSA. 29 U.S.C. § 203(e).

29. At all relevant times, Strickland and the Putative Collective Members were engaged in commerce or in the production of goods for commerce.

30. CAMC consistently and regularly required Strickland and Putative Collective Members to clock out for 30 minutes a day for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted, and duty free meal breaks.

31. As a result, CAMC failed to pay Strickland and the Putative Collective Members wages (including overtime) for the compensable work they performed during their unpaid "meal breaks."

32. CAMC's unpaid meal break policy, therefore, violates the FLSA by depriving Strickland and the Putative Collective Members of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

## FACTS

33. CAMC is an integrated health system "made of six hospitals: CAMC General Hospital, CAMC Greenbrier Valley Medical Center, CAMC Memorial Hospital, CAMC Plateau Medical Center, CAMC Teays Valley Hospital, and CAMC Women and Children's Hospital."[1]

34. To meet its business objectives, CAMC hires patient care workers, including Strickland and the Putative Collective Members, to work in its various hospitals.

35. CAMC uniformly classifies these patient care employees (including Strickland and the Putative Collective Members) as non-exempt and pays them on an hourly basis.

36. While exact job titles and precise job duties may differ, these patient care employees are subjected to the same or similar illegal pay practices for similar work.

37. For example, Strickland worked for CAMC as a Nursing Assistant at CAMC General Hospital in Charleston, West Virginia from approximately February 2022 until November 2022.

---

[1] https://www.camc.org/about-camc (last visited October 5, 2023).

-4-

38. As a Nursing Assistant, Strickland's primary responsibilities included providing direct patient care, such as monitoring patients, checking vital signs, preparing patients for surgery, cleaning operating rooms and surgical tools, charting treatments, responding to emergencies, and generally assisting doctors and other nursing staff.

39. Throughout his employment, CAMC classified Strickland as non-exempt and paid him on an hourly basis.

40. Throughout his employment, CAMC subjected Strickland to its common practice of requiring him to clock out for 30 minutes a day for so-called "meal breaks."

41. But throughout his employment, Strickland did not actually receive *bona fide* meal breaks.

42. Strickland and the Putative Collective Members perform their jobs under CAMC's supervision and use materials, equipment, and technology CAMC approves and supplies.

43. CAMC requires Strickland and the Putative Collective Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their patient care jobs.

44. At the end of each pay period, Strickland and the Putative Collective Members receive wages from CAMC that are determined by common systems and methods that CAMC selects and controls.

45. CAMC requires Strickland and the Putative Collective Members to record their hours worked using CAMC's timeclock system.

46. Further, CAMC subjects Strickland and the Putative Collective Members to a common unpaid meal break policy and practice.

47. Specifically, CAMC requires Strickland and Putative Collective Members to clock out for 30 minutes a day for so-called "meal breaks."

48. CAMC requires and/or expects Strickland and the Putative Collective Members to clock out for their meal periods, regardless of whether they actually receive full, uninterrupted, 30-minute meal breaks.

49. Because Strickland and Putative Collective Members clock out for their meal periods at the direction of CAMC's supervisory and managerial employees, CAMC assumes Strickland and the Putative Collective Members receive *bona fide* meal breaks each shift they work.

50. But Strickland and the Putative Collective Members do not actually receive *bona fide* meal breaks.

51. Instead, CAMC requires Strickland and the Putative Collective Members to remain on-duty and perform compensable work throughout their shifts, including during unpaid meal periods.

52. And CAMC continuously subjects Strickland and the Putative Collective Members to work interruptions during their unpaid meal periods.

53. In fact, even when Strickland and the Putative Collective Members attempt to take a meal break, CAMC requires them to carry an ASCOM phone so CAMC can contact them at any time (including during their unpaid "meal breaks").

54. Because of these constant work interruptions, Strickland and the Putative Collective Members are not free to engage in personal activities during their unpaid meal periods.

55. Rather, during their unpaid "meal breaks," Strickland and the Putative Collective Members are necessarily forced to perform their regular patient care job duties and responsibilities.

56. Thus, Strickland and the Putative Collective Members routinely spend their unpaid "meal breaks" performing work for CAMC's—not these employees'—predominant benefit.

57. This unpaid time is compensable under the FLSA because CAMC knew, or should have known, that (1) Strickland and the Putative Collective Members were performing unpaid work

during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on CAMC's premises or under CAMC's supervision, and/or (8) they spent their unpaid meal periods substantially performing their regular patient care duties for CAMC's predominant benefit.

58. CAMC fails to exercise its duty as Strickland's and the Putative Collective Members' employer to ensure these employees are not performing work that CAMC does not want performed during their unpaid "meal breaks."

59. And CAMC knows Strickland and the Putative Collective Members routinely perform work "off the clock" during their unpaid meal breaks because CAMC expects and requires these employees to do so.

60. In fact, Strickland and the Putative Collective Members repeatedly complained to CAMC's management and their supervisors about being forced to work during their unpaid "meal breaks."

61. Thus, CAMC requested, suffered, permitted, or allowed Strickland and the Putative Collective Members to work during their unpaid "meal breaks."

62. Despite accepting the benefits, CAMC does not pay Strickland and the Putative Collective Members for the compensable work they perform during their unpaid "meal breaks."

63. Thus, under CAMC's uniform unpaid meal break policy, Strickland and the Putative Collective Members are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in violation of the FLSA.

64. Strickland worked more than 40 hours in at least one workweek during the three years before this lawsuit was filed.

65. Likewise, each Putative Collective Member worked more than 40 hours in at least one workweek during the three years before this lawsuit was filed.

66. Indeed, Strickland and the Putative Collective Members typically worked 8- to 12-hour shifts for 5 to 6 days a week (or 40 to 60 hours).

67. And Strickland and the Putative Collective Members are also regularly required to work "off the clock" during their unpaid meal breaks to complete their patient care job duties and responsibilities for CAMC's predominate benefit.

68. As a result, Strickland and the Putative Collective Members routinely work more than 40 hours in a typical workweek.

69. When Strickland and the Putative Collective Members work more than 40 hours in a workweek, CAMC does not pay them overtime wages for all overtime hours worked because CAMC fails to include time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek in violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

70. Strickland incorporates all other paragraphs by reference.

71. Strickland brings his claims as a collective action on behalf of himself and the Putative Collective Members.

72. The Putative Collective Members were victimized by CAMC's unpaid meal break policy, which is in willful violation of the FLSA.

73. Other Putative Collective Members worked with Strickland and indicated they were paid in the same manner, performed similar work, and were subject to CAMC's same unpaid meal break policy.

74. Based on his experience with CAMC, Strickland is aware CAMC's illegal practices were imposed on the Putative Collective Members.

75. The Putative Collective Members are similarly situated in the most relevant respects.

76. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

77. Therefore, the specific job titles or precise job locations of the various Putative Collective Members do not prevent collective treatment.

78. Rather, the putative collective is held together by CAMC's uniform unpaid meal break policy, which systematically required Strickland and Putative Collective Members to clock-out and continue working during their unpaid meal periods, which deprived Strickland and the Putative Collective Members of overtime wages for all hours worked after 40 in a workweek.

79. CAMC's failure to pay overtime wages as required by the FLSA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Putative Collective Members.

80. CAMC's records reflect the number of hours the Putative Collective Members recorded they worked each week.

81. CAMC's records also show that each time that Strickland and Putative Collective Members were clocked out during their unpaid meal periods for supposed "meal breaks."

82. The back wages owed to Strickland and the Putative Collective Members can therefore be calculated using the same formula applied to the same records.

83. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to CAMC's records, and there is no detraction from the common nucleus of liability facts.

84. Therefore, the issue of damages does not preclude collective treatment.

85. Strickland's experiences are therefore typical of the experiences of the Putative Collective Members.

86. Strickland has no interest contrary to, or in conflict with, the Putative Collective Members.

87. Like each Putative Collective Member, Strickland has an interest in obtaining the unpaid wages owed to them under federal law.

88. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

89. Absent this collective action, many Putative Collective Members likely will not obtain redress for their injuries, and CAMC will reap the unjust benefits of violating the FLSA.

90. Further, even if some of the Putative Collective Members could afford individual litigation against CAMC, it would be unduly burdensome to the judicial system.

91. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Collective Members' claims.

92. Strickland knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

93. As part of its regular business practices, CAMC intentionally, willfully, and repeatedly violated the FLSA with respect to Strickland and the Putative Collective Members.

94. CAMC's illegal unpaid meal break policy deprived Strickland and the Putative Collective Members of overtime wages for all hours worked after 40 in a workweek, which they are owed under federal law.

95. There are many similarly situated Putative Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

96. This notice should be sent to the Putative Collective Members pursuant to 29 U.S.C. § 216(b).

97. Those similarly situated employees are known to CAMC, are readily identifiable, and can be located through CAMC's business and personnel records.

### CAMC'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

98. Strickland incorporates all other paragraphs by reference.

99. CAMC knew it was subject to the FLSA's overtime provisions.

100. CAMC knew the FLSA required it to pay non-exempt employees, including the Putative Collective Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

101. CAMC knew the Putative Collective Members were non-exempt employees entitled to overtime pay.

102. CAMC knew the Putative Collective Members were paid on an hourly basis.

103. CAMC knew each Putative Collective Members worked over 40 hours in at least one workweek during the three years before this lawsuit was filed because CAMC required these employees to record their hours worked using its timeclock system.

104. CAMC knew the FLSA required it to pay employees, including the Putative Collective Members, for all hours they performed compensable work.

105. CAMC knew that, as the Putative Collective Members' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that CAMC did not want performed.

106. CAMC knew it failed to provide the Putative Collective Members with *bona fide*, uninterrupted meal breaks.

107. CAMC knew the Putative Collective Members did not actually receive *bona fide*, uninterrupted meal breaks.

108. CAMC knew the Putative Collective Members regularly worked during their unpaid meal breaks.

109. CAMC knew it requested, suffered, permitted, or allowed the Putative Collective Members to work during their unpaid meal breaks.

110. CAMC knew the Putative Collective Members regularly spent their unpaid meal breaks substantially performing their regular patient care job duties for CAMC's predominant benefit.

111. Indeed, Putative Collective Members complained to CAMC's management, HR, and/or their supervisors about being forced to work during their unpaid meal breaks.

112. Thus, CAMC knew, should have known, or recklessly disregarded the fact that the Putative Collective Members performed compensable work during their unpaid meal breaks.

113. Nonetheless, CAMC required Strickland and Putative Collective Members to suffer unpaid meal periods of 30 minutes even though those employees were on duty, interrupted, and/or interruptible during such unpaid time.

114. In other words, CAMC knew, should have known, or recklessly disregarded the fact that it did not pay the Putative Collective Members for all the hours they performed compensable work.

115. CAMC's unpaid meal break policy for Putative Collective Members' was neither reasonable, nor was the unpaid meal break policy instituted in good faith where CAMC knew or should have known that Putative Collective Members were not and realistically could not be relieved of all work duties during their unpaid meal periods.

116. CAMC's failure to pay the Putative Collective Members overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

117. CAMC knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Strickland and the Putative Collective Members of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

118. CAMC knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA.

119. In fact, CAMC has been sued previously by employees for failing to pay overtime wages in violation of the FLSA, including for an unpaid meal break policy. *See, e.g., Jarrell, et al. v. Charleston Area Medical Center, Inc.*, No. 2:17-CV-01371 (S.D. W.Va.). While CAMC apparently changed the mechanism for recording unpaid meal periods following the *Jarrell* matter, CAMC did not take measures to ensure that non-exempt patient care workers received meal periods during which they were fully relieved of all work duties.

### CAUSE OF ACTION

#### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

120. Strickland incorporates all other paragraphs by reference.

121. Strickland brings his FLSA claim on behalf of himself and the Putative Collective Members pursuant to 29 U.S.C. § 216(b).

122. CAMC violated, and is violating, the FLSA by employing non-exempt employees (Strickland and the Putative Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks.

123. CAMC's unlawful conduct harmed Strickland and the Putative Collective Members by depriving them of the overtime wages they are owed.

124. Accordingly, Strickland and the Putative Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

125. Strickland demands a trial by jury.

## RELIEF SOUGHT

Strickland, individually and on behalf of the Putative Collective Members, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b.    An Order pursuant to Section 16(b) of the FLSA finding CAMC liable for unpaid overtime wages due to Strickland and the Putative Collective Members, plus liquidated damages in amount equal to their unpaid overtime wages;

    c.    Judgment awarding Strickland and the Putative Collective Members all unpaid wages, liquidated damages, and any other penalties available under the FLSA;

    d.    An Order awarding attorney's fees, costs, and expenses;

    e.    Pre- and post-judgment interest at the highest applicable rates; and

   f.  Such other and further relief as may be necessary and appropriate.

Dated: November 2, 2023.        Respectfully submitted,

                  */s/ Walt Auvil*
                  Kirk R. Auvil
                  Walt Auvil
                  **THE EMPLOYMENT LAW CENTER, PLLC**
                  1208 Market Street
                  Parkersburg, West Virginia 26101
                  Phone: 304-485-3058; Fax: 304-485-63434
                  theemploymentlawcenter@gmail.com
                  auvil@theemploymentlawcenter.com
                  *Local Counsel for Plaintiff*

                  Michael A. Josephson*
                  Andrew W. Dunlap*
                  William M. Hogg*
                  **JOSEPHSON DUNLAP LLP**
                  11 Greenway Plaza, Suite 3050
                  Houston, Texas 77046
                  Phone: 713-352-1100; Fax: 713-352-3300
                  mjosephson@mybackwages.com
                  adunlap@mybackwages.com
                  whogg@mybackwages.com

                  Richard J. (Rex) Burch*
                  **BRUCKNER BURCH PLLC**
                  11 Greenway Plaza, Suite 3025
                  Houston, Texas 77046
                  Phone: 713-877-8788
                  rburch@brucknerburch.com

                  William C. (Clif) Alexander*
                  Austin W. Anderson*
                  **ANDERSON ALEXANDER PLLC**
                  101 N. Shoreline Blvd., Suite 610
                  Corpus Christi, Texas 78401
                  Phone: 361-452-1279
                  clif@a2xlaw.com
                  austin@a2xlaw.com
                  *\*Visiting attorney statements forthcoming*

                  **ATTORNEYS FOR STRICKLAND &**
                  **THE PUTATIVE COLLECTIVE MEMBERS**