IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

WILLIAM STRICKLAND,
*Individually and for Others Similarly Situated*,

          Plaintiff,

v.                        CIVIL ACTION NO. 2:23-cv-00676

CHARLESTON AREA MEDICAL CENTER, INC.,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Strickland's Motion for Conditional Certification and Issuance of Court-Authorized Notice* (Document 17), *Strickland's Memorandum in Support of Motion for Conditional Certification and Issuance of Court-Authorized Notice* (Document 18), the *Defendant's Response in Opposition to Plaintiff's Motion for Conditional Certification and Issuance of Court Authorized Notice* (Document 22), and *Strickland's Reply in Support of FLSA Conditional Certification* (Document 23), as well as all attached exhibits. For the reasons stated herein, the Court finds that the motion for conditional certification and issuance of court-authorized notice should be granted.

**FACTS AND PROCEDURAL HISTORY**[1]

The Named Plaintiff, William Strickland, initiated this action with an *Original Collective Action Complaint* (Document 1) on October 11, 2023. On November 2, 2023, he filed the *First*

---

[1] The facts recounted herein are drawn from the affidavits and other exhibits submitted by the parties, as well as the allegations contained in the complaint.

*Amended Collective Action Complaint* (Document 5), which is now the operative pleading.  Mr. Strickland was employed by the Defendant, Charleston Area Medical Center, Inc. (CAMC), as a Nursing Assistant.  He brings claims under the Fair Labor Standards Act (FLSA) on behalf of himself and a putative class of similarly situated patient care workers.

Mr. Strickland alleges that CAMC failed to pay him, and the putative class members, for all the hours they worked because they were not paid for 30-minute meal breaks during which they were frequently required to perform job duties.  Mr. Strickland and three other hourly employees with patient care duties at either CAMC Memorial Hospital or CAMC General Hospital submitted declarations describing their experience with unpaid meal breaks during their CAMC employment.  They indicate that CAMC training, as well as their ethical obligations, required them to assist with patient needs as they arose, even during meal breaks.  They remained responsible for their assigned patients until they were relieved at the end of a shift.  In part because the hospitals were understaffed, other employees covering for patient care during meal periods did not generally fully relieve employees on meal breaks.  The employees described unpaid meal periods that were frequently, sometimes nearly always, missed entirely, interrupted, or incomplete.  Meal periods were always subject to interruption. Employees were required to carry an Ascom phone to receive work related calls and alerts during breaks, and one employee recounted being disciplined for taking a meal break on another floor, where she was less available to respond to patient needs.

The employees state that supervisors were aware of the frequent interruptions and were often the ones interrupting patient care workers during meal breaks.  Nonetheless, employees indicate that they were not trained as to how to request payment for unpaid meal breaks that were interrupted or as to when they would be entitled to compensation for interrupted or incomplete

2

meal breaks. The employee declarations describe similar experiences for employees in multiple roles including a nursing assistant, charge nurse, registered nurse, and surgical tech at two different CAMC hospitals. They all shared an understanding that their 30-minute meal break would be unpaid, even if they were interrupted to perform work duties, and they all indicated that that understanding was common among co-workers, with frequent complaints about unpaid, on-duty "breaks." Some noted awareness that employees were disciplined for failing to clock-out for meal periods. One employee described the transition from a previous system in which meal breaks were automatically deducted and employees could fill out an edit book to reflect that they had not taken a lunch break, subject to manager approval (which was often withheld). After CAMC stopped auto-deducting meal breaks and required employees to clock out, it removed the edit book but "did not tell us we could request compensation for having to work through our breaks." (Kitchen Dec. at ¶ 9) (Document 18-5.)

CAMC provided declarations from management employees who supervised the employees who submitted declarations in support of the Plaintiff. They indicate that employees are told to turn off their Ascom phones during meal breaks. In addition, the supervisor declarations state that employees typically track their time using their mobile phones and can edit their time without supervisor approval. Coverage and timing for meal breaks vary between departments and roles.

CAMC provided a declaration from Susan Adkins, its Corporate Director of Total Compensation, previously CAMC's Compensation and Benefits Manager. She described CAMC's timekeeping system, through which employees clock in or out with a mobile phone application or any CAMC computer. Those systems also provide a method for employees to edit their time records independently, and employees may also ask supervisors to edit their time.

3

CAMC's policy regarding meal periods and breaks provides as follows:

> A meal period of thirty (30) minutes is generally provided for each 8 ½ hour shift.   The meal period is not considered work time nor is it considered paid time unless it is interrupted.   Employees document their meal period by clocking in and out using the company time and attendance system.   During the course of a shift of six (6) or more hours, and when an employee is not afforded breaks and/or permitted to eat a meal, the company shall make available a paid twenty (20) minute meal break.   The company reserves the right to determine the time and location of meal periods.   Employees should take the full 30 minute meal period unless a supervisor requests that the employee return early due to department needs.   Employees who clock back in prior to 30 minutes may be disciplined for failure to properly complete time records.

(CAMC Meal Period Policy) (Document 22-1.)   CAMC policy also provides that a meal break that lasts more than 25 minutes is a bona fide meal break, and an employee is not paid for the time during which they are clocked out.   Employees have a 9-minute grace period, such that only 30 minutes are unpaid for breaks lasting between 30 and 39 minutes.

The Plaintiff defines his proposed FLSA class as follows:

> All current and former hourly-paid, non-exempt employees of Charleston Area Medical Center, Inc. ("CAMC") with direct patient care duties who suffered unpaid meal periods and worked at either CAMC Memorial Hospital and/or CAMC General Hospital at any time from November 1, 2020 through the present. [2]

(Proposed Class Notice) (Document 23-1.)   He requests that the Court approve his proposed Notice and Consent forms, require CAMC to produce the putative collective action members' contact information, authorize issuance of notice by mail, email, and text message, and approve a 60-day notice period, with one reminder notice at 30 days.

---

[2] In reply to issues raised in the Defendant's response to the motion for conditional certification, the Plaintiff agreed to narrow the class to the relevant current and former employees at two specified CAMC hospitals, rather than impacted employees at all CAMC healthcare facilities.

**APPLICABLE LAW**

The FLSA permits employees with claims for unpaid minimum wages or unpaid overtime compensation to bring actions against the employer on behalf of themselves and similarly situated employees. 29 U.S.C. § 216(b). Affected employees must give consent in writing to become parties to an FLSA collective action. *Id.* Courts may facilitate notice to potential plaintiffs. *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009). Courts typically use a two-stage process for class certification in FLSA collective action cases. "The 'notice' stage of an FLSA collective action is also known as the 'conditional certification' stage," and typically takes place early in litigation before the completion of discovery. *Id.* It is during this stage that the district court determines "'whether the plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to the putative class members would be appropriate." *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682, 686 (D. Md. 2010) (quoting *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)). It is the plaintiff's burden to demonstrate that a potential class of similarly situated individuals exists, and the plaintiff must produce some factual evidence in support of conditional certification. *Purdham*, 629 F. Supp. 2d at 548. The standard is "fairly lenient" at the conditional certification stage. *MacGregor v. Farmers Ins. Exch.*, Civil No. 2:10–cv–03088, 2012 WL 2974679, *1 –2 (D.S.C. July 20, 2012) (quoting *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir.2007). After discovery, a defendant may move to decertify the class. "At that point, the court makes a factual determination as to whether the class is truly 'similarly situated.'" *Id.* at 547.

**DISCUSSION**

The Plaintiff argues that he has made a sufficient factual showing for the Court to issue notice to the proposed FLSA class. He emphasizes the lenient standard applicable for conditional certification and issuance of notice under the FLSA. He argues that he has presented sufficient evidence that CAMC had a policy or practice of requiring employees to clock out for an unpaid meal break, during which they were required to remain available to respond to patient needs and were frequently interrupted and required to work. He contends that employees were never informed that they could request compensation or adjust their time to reflect their inability to take an uninterrupted meal break. He argues that he has presented sufficient evidence that this practice was widespread at CAMC hospitals, not dependent on the specific employee, department, or supervisor.

CAMC argues that it has meal break and timekeeping policies that comply with the law and "adequately address the potential for interruptions during meal breaks." (Def.'s Resp. at 1.) It objects to the Plaintiff's assertion that the FLSA requires mealtimes to be paid if they are *subject to* interruption, but not actually interrupted. CAMC urges the Court to consider the factual evidence it has presented, rather than accepting the Plaintiff's allegations as true. It contends that any unpaid working time resulted from employees' failure to take advantage of its policies and properly record their time. It argues that employees are not similarly situated because claims depend on the individual employee's timekeeping practices, as well as their individual supervisor's instructions as to mealtimes, knowledge of the employee's work during mealtimes, and timekeeping. Because most employees use their cell phones to clock in and out, CAMC contends

6

that even when supervisors are aware of an interrupted or incomplete meal break, they would not necessarily know that the employee was not paid for that meal break.

The Code of Federal Regulations provides that "Bona fide meal periods are not worktime…. The employee must be completely relieved from duty for the purposes of eating regular meals…. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." 29 C.F.R. § 785.19(a). The Fourth Circuit has addressed when meal periods may be excluded from an employee's work hours, where the employees are required to remain on call. *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 544–45 (4th Cir. 1998). It explained that courts must determine whether the time is "spent predominantly for the employer's benefit," in which case it must be compensated under the FLSA. *Id.* at 544. "[W]e believe the most appropriate standard for compensability is a 'flexible and realistic' one where we determine whether, on balance, employees use mealtime for their own, or for their employer's benefit." *Id*. at 545. The Fourth Circuit emphasized that the standard requires careful analysis of the facts. It found that the EMS employees in *Roy* were not entitled to pay for all mealtimes because they "had no official responsibilities during [meals] other than to respond to an emergency call if called upon," the employer had a policy "not to interrupt the lives of these employees during their mealtimes for any reason except for an emergency call," employees were free to go anywhere within their response zones during mealtimes, and timesheets showed only about a quarter of mealtimes were interrupted. *Id.*

A district court within this circuit considering similar issues recently framed the question as "whether Plaintiff has presented sufficient evidence to show that there were unwritten policies, consistently applied, that required putative collective members to work…during unpaid meal

breaks without compensation." *Chapman v. Saber Healthcare Grp., LLC*, 623 F. Supp. 3d 664, 674 (E.D. Va. 2022). That court found conditional certification warranted where employees submitted consistent declarations describing uncompensated work during meal periods, though it limited the collective to employees in similar jobs in the same facilities as the declarants. *Id.* at 678.

CAMC relies on its policies and declarations from supervisory employees to contend that employees who completed their timekeeping in accordance with its policies were paid for all working time, including interrupted meal breaks. However, the supervisor declarations conflict with the consistent accounts of the employees in many regards. "At this early stage . . . the Court does not resolve factual disputes, decide substantive issues going into the ultimate merits, or make credibility determinations." *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 371 (N.D.W. Va. 2012) (internal quotations omitted). For example, employees indicate that they were required to keep Ascom phones on during breaks, while the supervisors indicate that they were to be turned off. The meal break policy states that a meal break may be considered paid time if it is interrupted but also informs employees that clocking back in prior to thirty minutes may result in discipline. Those factual disputes and inconsistencies cannot be resolved at this stage.

The standard for conditional certification requires only that the Plaintiff produce "some factual evidence" in support of conditional certification. *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 548 (E.D. Va. 2009). The employee declarations state that employees are required to take unpaid thirty-minute lunch breaks, during which they are routinely interrupted and required to provide patient care or perform other work duties.[3] Due to short staffing and ethical

---

3 There is disagreement between the parties as to whether meal breaks that were *not* interrupted could be unpaid under the circumstances presented, or whether the obligation to remain nearby and attentive, and the frequency of

obligations to patients, patient care workers could not be fully relieved, and they described being interrupted more often than not during attempted meal breaks. Supervisors were often the ones interrupting employees and directing them to perform work tasks during meal breaks. The employees all stated that they were never taught how and when to edit their time to receive pay for the incomplete or interrupted meal breaks. They all understood that they would not be paid for meal breaks, even when they worked during those "breaks," and they all indicated that unpaid, working meal breaks were a frequent topic of complaints among other employees. Despite working in different patient-care roles in different departments with different supervisors, the employees recounted quite similar experiences. In short, the Plaintiff has presented evidence that he, and other patient care workers at CAMC Memorial and CAMC General, performed unpaid work on a regular basis during their meal breaks, with the knowledge of supervisory employees. As such, and particularly given the Plaintiff's decision to narrow the proposed collective to patient care workers at the two hospitals for which he provided employee declarations, the Court finds that he has made the required "modest factual showing" that he and members of the proposed collective were "victims of a common policy or plan that violated the law." *Ison v. MarkWest Energy Partners, LP*, No. 3:21-cv-333, 2021 WL 5989084 (S. D. W. Va. Dec. 17, 2021) (Chambers, J.) (internal quotations marks omitted).

Finally, the Court has carefully reviewed the Plaintiff's proposed notice and finds it to be fair and appropriate. The Defendant objected to inclusion of patient care workers at locations other than CAMC General and Memorial, and the Plaintiff agreed to narrow the class accordingly. The Defendant also objected to the inclusion of patient care workers in "departments with lower

---

interruptions, rendered all meal breaks working time. The Court finds it inappropriate to resolve that issue prior to the completion of discovery.

acuity of patients, such as nurse assistants in outpatient offices." (Def.'s Resp. at 16-17.) The Plaintiff included declarations of employees in multiple patient care roles, which all notably referenced understaffing as a cause of frequent interruptions, and the Court finds the evidence presented sufficient to include all hourly patient care workers in the two hospitals at issue. The Court finds that the Plaintiff's proposed method of sending the notice and consent forms by first class mail, e-mail, and text message is appropriate.[4] The Court therefore finds that the Plaintiff's request that CAMC be ordered to provide Plaintiff's Counsel with the names, last-known physical addresses, personal email addresses, telephone numbers, dates of employment, and locations/departments worked for the putative collective members is reasonable. Finally, the Court finds that the requested sixty-day opt-in period, with a reminder notice sent after thirty days, is appropriate.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that *Strickland's Motion for Conditional Certification and Issuance of Court-Authorized Notice* (Document 17) be **GRANTED**. The Court **ORDERS** that the class be **CONDITIONALLY CERTIFED** as defined in the Plaintiff's motion and reply brief. The Court further **ORDERS** that the Defendant provide to Counsel for the Plaintiffs the following information within **TEN DAYS** of entry of this Order: the names, last-known physical addresses, personal email addresses, telephone numbers, dates of employment, and locations/departments worked for the putative

---

[4] Although some courts are hesitant to approve text notifications, the evidence in this case indicates that most putative class members used personal cell phones to manage their timekeeping. As such, the Court finds it more likely to be a reliable method of notice and less likely to be viewed as overly intrusive than may sometimes be the case.

collective members in electronic format. Finally, the Court **ORDERS** that the proposed notice docketed at Document 23-1 be **APPROVED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

        ENTER:    May 6, 2024

        _____
        IRENE C. BERGER
        UNITED STATES DISTRICT JUDGE
        SOUTHERN DISTRICT OF WEST VIRGINIA